**Tino CHAVEZ and Theresa Chavez, Appellants (Plaintiffs below),**

v.

**CITY OF LARAMIE, a Municipal Corporation, and Wyoming State Highway Department, Appellees (Defendants below).**

No. 3185.

Supreme Court of Wyoming.

Feb. 5, 1964.

Jay Gaer, Laramie, for appellants.

Thomas S. Smith, City Atty., Laramie, for appellee City of Laramie.

John F. Raper, Atty. Gen., Glenn A. Williams, Asst. Deputy Atty. Gen., and Dean W. Clark, Sp. Asst. Atty. Gen., for appellee Wyoming State Highway Dept.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

The complaint of Tino Chavez and Theresa Chavez sets forth a claim for damages in connection with the construction of a new viaduct and highway approaches within the corporate limits of the City of Laramie, for relocation of a highway. The construction was being done under a cooperative agreement between the State of Wyoming and City of Laramie. The claim for damages is based upon the provisions of Art. 1, § 33, Wyoming Constitution, which guarantees:

> "Private property shall not be taken or damaged for public or private use without just compensation."

Specifically, the claimants allege that a contractor made excavations for the improvement and hired a subcontractor to drive long-metal piling at specified places for the installation of abutments on which the viaduct structure would rest; that heavy equipment used by the subcontractor crushed a sewer line, and one of the pilings struck and severed a water main; and that water from the severed main flowed into the sewer line and backed up into a basement apartment occupied by the Chavezes.

Damages in the amount of $1,325.80 were claimed to plaintiffs' household effects and their leasehold estate in the apartment. The district court sustained motions by the state and by the city to dismiss the complaint, because of governmental immunity. The questions presented on appeal are these:

1. Does Art. 1, § 33, of our state constitution entitle claimants to just compensation, in a case of this kind, either from the state or city?
2. If not, can the Chavezes maintain an action against the city for negligence?

### The Constitutional Guarantee

■ Plaintiffs do not contend their property was taken. However, they do contend it was *damaged*. But that is not enough. According to the constitutional provision set out above, they would be entitled to compensation from the public only if they alleged and proved their property was damaged "for public * * * use."

The case of Angelle v. State, 212 La. 1069, 34 So.2d 321, 327, 2 A.L.R.2d 666, had to do with a claim under a similar constitutional provision, where property was damaged as a result of an accident which happened on a public-works project. The Supreme Court of Louisiana in that case said it could not perceive how the unintentional destruction of plaintiffs' property was "for a public purpose." In fact it described the damage (on page 323 of 34 So.2d) as a wholly unintentional destruction which served no public purpose whatever.

The allegations of the Chavezes in this case make it clear the crushing of the sewer line and severing of the water main, with the resulting damage to their property, were accidental and unintentional. Certainly the accident and consequent damage served no public purpose, and there was absent a taking or damaging of property *for public use*.

In Lund v. Salt Lake County, 58 Utah 546, 200 P. 510, 514, the Supreme Court of Utah said it was clearly of the opinion that the damages for which compensation is allowed under the constitution are such as are the direct consequences of the lawful exercise of eminent domain, and that ordinarily such damages must be unavoidable. At 200 P. 512, the court also said injuries

cognizable at common law or in equity are ordinarily not covered by constitutional provisions authorizing compensation for taking or damaging property.

■■ It certainly will not be contended that every destruction of property or injury thereto by public officers or their agents, in the discharge of governmental functions, is covered by the constitutional guaranty relied upon in this case. Where the injury involves a tort, being caused by the negligence of public officers or their agents, it cannot be said that property is taken or damaged for public use. Sanguinetti v. United States, Ct.Cls., 264 U.S. 146, 150, 44 S.Ct. 264, 68 L.Ed. 608, 611; Keokuk & Hamilton Bridge Company v. United States, Ct.Cls., 260 U.S. 125, 127, 43 S.Ct. 37, 67 L.Ed. 165, 167; Hughes v. United States, Ct.Cls., 230 U.S. 24, 35, 33 S.Ct. 1019, 57 L.Ed. 1374, 1379, 46 L.R.A.,N.S., 624. See also Angelle v. State, supra, at 34 So.2d 325.

■ We think the rule stated in 4 Nichols, Eminent Domain, § 14.245[1], pp. 626–628 (Revised 3d Ed.), is correct. It states:

"If the damage for which recovery is sought is the result of improper, unlawful or negligent construction * * * recovery may not be had therefor in the [condemnation] proceeding; the owner is relegated in such case to a common-law action for damages."

■ If we permitted the theory of plaintiffs to prevail in this case, we would subject the state and city to actions for damages in all cases involving injuries to or destruction of private property resulting from the torts of their agents, when acting in an official capacity. This would effectually repeal the universal rule that a state exercising governmental functions cannot be made to respond in damages for tort and is not liable for the torts of its officers or agents in the discharge of their official duties, unless it has voluntarily assumed such liability and consented to be liable. See Art. 1, § 8, Wyoming Constitution; and 81 C.J.S. States § 130, p. 1137.

## Governmental Capacity of City

In addition to allegations upon which the Chavezes predicate their right to recover damages under the provisions of Art. 1, § 33, of the state constitution, they have also alleged counts of negligence against the City of Laramie. They agree an action can be maintained under these counts, however, only if the city was engaged in a proprietary function rather than a governmental function.

The argument is made that even though *construction* of water systems and sewer systems may be held to be governmental functions of a municipal corporation, courts hold that *maintenance* of such systems is a proprietary function of the city, and hence it is liable for negligent maintenance. As authority for this statement counsel cites Lore v. Town of Douglas, Wyo., 355 P.2d 367; Seaman v. Big Horn Canal Ass'n, 29 Wyo. 391, 213 P. 938; and Annotation 59 A.L.R.2d 281–288.

It is unnecessary for us to review at this time the question as to whether a municipality can be made to respond in damages for negligence in the maintenance of its water and sewer systems, because the claim asserted by the Chavezes was predicated upon negligence in the construction of a street improvement, namely a viaduct, and not upon negligence in the maintenance of its water and sewer systems.

The complaint commences with the statement that the State Highway Department and the City of Laramie are cooperating, under contract between them, in the relocation of a portion of a highway through the City of Laramie and "in the prosecution thereof" are building a new viaduct. It is also alleged that plaintiffs' damage was caused by the negligent crushing of the sewer line and the negligent severing of the water main. This happened in connection with construction operations on the viaduct.

The important thing, as far as our decision is concerned, is that there is a total absence of any allegation charging the city with negligence in the repair of its sewer

and water lines after they were broken, or with negligently permitting them to remain broken, or with any act of negligence in maintaining the systems. This distinguishes the present case from the Lore case relied on by appellants. In the Lore case, the Town of Douglas was engaged in flushing out its sewer system, which was strictly a maintenance operation.

An argument similar to the one made in this case was made in Wilson v. City of Laramie, 65 Wyo. 234, 199 P.2d 119, where it was alleged the city was engaged in cutting down and lowering the grades of certain streets; that, in so doing, it uncovered and exposed pipes and conduits of the water system and gas system, and in order to remedy that situation, it was necessary to excavate trenches in these streets to replace the pipes.

This court held in the Wilson case, with Justice Blume writing, at 199 P.2d 120–121, that the work in connection with the water system and gas system was merely an incidental portion of the main thing which the city undertook to do; and that the work done was in connection with the lowering of the grade, which was work in the nature of an improvement of the streets.

In the Wilson case, the city had deliberately and intentionally dug trenches for the express purpose of replacing water and gas lines. If the work, in spite of that situation, was considered to be primarily in connection with the main purpose of improving the streets, it would follow *a fortiori* that the work in the case at bar would be in connection with the main purpose of improving streets. No other purpose was present and injury to the water and sewer lines was not only incidental but accidental.

As to whether, in constructing and improving public streets and highways, a municipal corporation acts in a governmental capacity and is not liable for the negligence of its servants, it is only logical that the rule should be the same as it is for water systems and sewer systems. In other words, according to appellants' argument, *constructing* would be a governmental func-

tion, while *maintaining* would be a proprietary function. However, we have already indicated that we consider the function here involved to be one of street improvement and construction, which is governmental. We need not therefore affirm or deny that street maintenance is a proprietary function.

The distinction between constructing and maintaining, which has been followed in many cases, was pointed out in the Wilson case, at 199 P.2d 121, and the exception to the rule of governmental immunity, which permits the *maintaining* of streets to be called a proprietary function, was referred to as an "illogical exception." Without trying to explain or justify such an exception, it is sufficient for us, in this case, to follow the Wilson decision and to hold, as was done in that case, that we will not extend the exception to the construction and improvement of public streets and highways.

It was, indeed, specifically recognized in Wilson, at 199 P.2d 122, that:

"In constructing and improving public streets and highways, the municipal corporation acts in a governmental capacity and is not liable for negligence."

There may be a tendency in some jurisdictions to limit or restrict the rule of governmental immunity insofar as it applies to municipalities, but that has not been done in this state. Appellants, in the case at bar, have not suggested a change in the rule. Neither have they attempted to show any reason for such a change.

Therefore, we again follow the settled rule and hold that the constructing and improving of public streets and highways is a governmental function, in connection with which a municipal corporation cannot be sued for the negligence of its officers or agents. In view of the fact that the City of Laramie was in the instant case engaged in a project having to do with the improvement and construction of streets, it is not answerable in tort for the acts complained of by the Chavezes.

The dismissals are accordingly affirmed.